# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ALLEN GERHARD, | ) No. 1:11-cv-00631 |
| | ) |
| Plaintiff, | ) Honorable Suzanne B. Conlon |
| | ) Magistrate Judge Susan E. Cox |
| v. | ) |
| | ) JURY DEMAND |
| D CONSTRUCTION, INC., | ) |
| TODD SANDENO and KEN SANDENO, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants D Construction, Todd Sandeno, and Ken Sandeno ("Defendants") by and through their attorneys, Seyfarth Shaw LLP, and pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, submit their memorandum in support of their motion for partial summary judgment on Counts One through Five of Plaintiff's Complaint, as follows:

## INTRODUCTION

Plaintiff Allen Gerhard ("Plaintiff" or "Gerhard") refused to attend a mandatory training, which resulted in the termination of his employment. He now seeks to hold Defendants liable for his insubordination. In his kitchen-sink Complaint, Plaintiff alleges that Defendants terminated his employment because of his alleged disability pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112 – 12117 (amended by the ADA Amendments Act of 2008, Pub. L. No. 110-325 and the Civil Rights Act of 1991, Pub. L. No. 102-166) (Count III) and in retaliation for Plaintiff's alleged protected activity under four different theories: the American Reinvestment and Recovery Act ("ARRA"), PL 111-5, 2009 HR, Sec. 1553 (Count I), the whistleblower provisions of the False Claims Act ("FCA"), 31 U.S.C.A. § 3730 *et. seq.* (Count II), the Illinois Whistleblower Act ("IWA"), 740 ILCS 174/15 (Count Four), and the common law tort of retaliatory discharge (Count V).

It is undisputed that Plaintiff's refusal to attend the Exelon training caused his termination. Counts I through V fail on that basis alone. As described more fully below, Counts I through V of Plaintiff's Complaint are entirely without merit, and Defendants are entitled to summary judgment on each of these claims.

## ARGUMENT

I. **LEGAL STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriate if the record evidence reveals no genuine issue of material fact and defendants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c);

*Turner v. The Saloon, Ltd.*, 595 F.3d 679, 683 (7th Cir. 2010). A genuine issue of material fact exists only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Once a moving party meets its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Kramer v. Village of N. Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004).

## II. DEFENDANTS KEN SANDENO AND TODD SANDENO ARE ENTITLED TO SUMMARY JUDGMENT ON COUNTS I THROUGH V

In his Complaint, Plaintiff identifies only Defendant D Construction, not Ken Sandeno or Todd Sandeno, as his employer for purposes of Counts One through Four *(see* Compl. at ¶¶ 63, 73, 79, 87). Plaintiff fails to identify *any* entity as his employer for purposes of Count Five. (*See* Compl. at ¶¶ 90-92). Indeed, the Sandenos did not "employ" Plaintiff, and did not terminate his employment. (SOF ¶¶ 4, 5). For these reasons, Ken Sandeno and Todd Sandeno request that this Court grant them summary judgment on Counts I through V of Plaintiff's Complaint.

## III. PLAINTIFF'S ADA CLAIM FAILS AS A MATTER OF LAW

In Count III, Plaintiff alleges that D Construction "discriminated against Plaintiff, in violation of the ADA, when it discharged him from his employment on October 20, 2009, because of his medical condition." (Compl. ¶ 81).[1] To establish a *prima facie* case of disability discrimination, Plaintiff must show that: (1) he suffered from a disability as defined in the ADA; (2) he was qualified to perform the essential functions of his job, with or without reasonable

---

[1] Although Plaintiff's Complaint does not allege a claim of failure to accommodate under the ADA, such a claim would fail anyway because the ADA does not establish a legal obligation to accommodate conduct, such as the refusal to attend a mandatory training. *See Bodenstab v. County of Cook*, 569 F.3d 651, 659 (7th Cir. 2009) (explaining that "[t]here is no legal obligation to 'accommodate' conduct, as opposed to disability.")

accommodation; (3) he suffered an adverse employment action; and (4) similarly-situated employees without a disability were treated more favorably. *See Dickerson v. Board of Trustees*, 657 F.3d 595, 601 (7th Cir. 2011). Plaintiff cannot establish a *prima facie* case of disability discrimination under the ADA because he was not disabled and he has not identified any similarly situated, non-disabled employees who were treated more favorably.[2] Even if Plaintiff could establish a *prima facie* case, he cannot show that D Construction's legitimate nondiscriminatory reason for terminating his employment – his insubordinate refusal to attend the Exelon training – was a pretext for discrimination.

### A. Plaintiff Did Not Suffer From A Disability

Plaintiff's disability discrimination claim fails because there is no evidence that Plaintiff suffered from a disability under the ADA. Plaintiff admits he could perform all of the physical and mental requirements of his job and did not need any assistance doing so. (SOF ¶ 47). Plaintiff testified that his alleged disabilities during his employment were "memory problems" and depression. (SOF ¶¶ 41-46). The ADA defines "disability" as "[a] physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." 42 U.S.C. § 12102(1)(A). There is no evidence that Plaintiff's memory problems or depression substantially limited one of more of his major life activities during his employment. (SOF ¶ 47-48). The conditions therefore did not render Plaintiff "disabled" under the ADA.

---

[2] Plaintiff's claims arose in 2009 (SOF ¶ 5). Therefore, the 2008 ADA amendments apply to this case, but the current regulations do not. *See Allen v. SouthCrest Hosp.*, 2011 WL 6394472, at *6 (10th Cir. Dec. 21, 2011).

B.  **There Is No Evidence That Any Similarly-Situated Employee Was Treated More Favorably Than Plaintiff**

Even if Plaintiff was disabled for purposes of his ADA claim (he is not), his discrimination claim also fails because there is no evidence that any similarly-situated, non-disabled employee was treated more favorably. To establish this element, Plaintiff must prove that Duran, the decision maker, allowed other employees to refuse to attend work-related training without terminating their employment. *See Eaton v. Ind. Dep't of Corr.*, 657 F.3d 551, 556 (7th Cir. 2011) (describing similarly situated requirement). Plaintiff admits he has no such evidence. (SOF ¶ 54; Gerhard Dep. 152). Indeed, no such evidence exists. Thus, summary judgment is warranted on Plaintiff's ADA discrimination claim. *See Andrews v. City of Chi.*, No. 10 C 2416, 2011 U.S. Dist. LEXIS 112693, *8 (N.D. Ill. Sept. 30, 2011) (granting defendant's motion for summary judgment, noting that disability status of Plaintiff's coworkers was unknown).

C.  **There Is No Evidence That The Company's Legitimate Non-Discriminatory Reason For Terminating Plaintiff's Employment Was Pretextual**

Plaintiff alleges that the Company's reason for the termination of his employment – his refusal to attend the Exelon training – is pretextual. Plaintiff's allegations are unsupported by the facts. It is well established that "[p]retext means a dishonest explanation, a lie rather than an oddity or an error." *Bodenstab v. County of Cook*, 569 F.3d 651, 657 (7th Cir. 2009) (affirming summary judgment on Plaintiff's ADA termination claim).

In this case, the undisputed facts reveal it was Plaintiff's insubordination, and not his disability, which led to the termination of his employment. Specifically, it is undisputed that D Construction had legitimate work needs at the Exelon facility (SOF ¶ 17); Duran directed Plaintiff to attend a training course at the Exelon facility (SOF ¶¶ 19, 21, 29); Plaintiff agreed to attend the Exelon training, but later changed his mind and refused to attend the training (SOF ¶¶ 22, 23); Plaintiff did not attend the Exelon training (SOF ¶¶ 28, 29); Plaintiff admits that he was

capable of attending the Exelon training (SOF ¶ 25); Plaintiff admits that his employment was terminated the day after he refused to attend the Exelon training (SOF ¶¶ 30, 37); and Plaintiff admits that Duran explained that Plaintiff's employment was terminated because he failed to attend the Exelon training (*Id.*). These undisputed facts reveal the legitimate, non-discriminatory reason why Plaintiff's employment was terminated; Plaintiff only has his own speculation to suggest that this reason is pretextual. That is not enough.

For example, Plaintiff attempts to excuse his insubordination by focusing on his subjective belief that he was not qualified to work at Exelon. (SOF ¶ 24). This is a red herring. Plaintiff suggests that he was concerned that he might have been "unfit for duty" at Exelon or that he would have been embarrassed if he failed what he believed to be the Exelon the drug test. (SOF ¶ 24). Yet, Plaintiff does not allege that any purported health condition or drug test would have prevented him from attending Exelon's training program. (SOF ¶ 25). Indeed, according to Plaintiff, Duran specifically told him, "Just take the training and don't worry about the drug test." (SOF ¶ 26). Plaintiff's own testimony reveals that Duran had one simple and unequivocal directive: attend the Exelon training. (SOF ¶ 29). When Plaintiff failed to do so, Duran terminated his employment. There simply is no evidence of pretext here.

For all of these reasons, Defendants are entitled to summary judgment on Count III of Plaintiff's Complaint alleging claims arising under the ADA.

## IV. PLAINTIFF'S ARRA CLAIM FAILS AS A MATTER OF LAW

In Count I, Plaintiff brings the first of his four retaliatory discharge claims, alleging that he "disclosed to [Defendants that they were] violating the law and mismanaging funds relating to projects receiving covered funding under the [ARRA]," and that this disclosure contributed to his termination. (Complaint ¶¶ 67-68). Plaintiff's ARRA claim fails because he never actually advised Defendants that he believed they committed ARRA violations. Plaintiff merely

6

identified general safety concerns in his role as a field safety inspector. Furthermore, at no time during Plaintiff's employment did Defendants perceive that Plaintiff identified ARRA violations; consequently, they could not and did not retaliate against him for doing so. Regardless, the undisputed evidence establishes that Plaintiff's refusal to attend the Exelon training – and not any alleged "whistle blowing" – that cost him his job.

### A. ARRA Provisions And Prohibitions

ARRA includes whistleblower provisions intended to protect employees who report concerns about the use of stimulus funds:

> (a) Prohibition of Reprisals.
> An employee of any non-Federal employer[3] receiving covered funds may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing, including a disclosure made in the ordinary course of an employee's duties, to [] a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct), [] information that the employee reasonably believes is evidence of
> (1) gross mismanagement of an agency contract or grant relating to covered funds;
> (2) a gross waste of covered funds;
> (3) a substantial and specific danger to public health or safety related to the implementation or use of covered funds;
> (4) an abuse of authority related to the implementation or use of covered funds; or
> (5) a violation of law, rule, or regulation related to an agency contract (including the competition for or negotiation of a contract) or grant, awarded or issued relating to covered funds.

*See* Section 1553 of Division A, Title XV of the American Recovery and Reinvestment Act of 2009, P.L. 111-5.[4] To prevail on his ARRA whistleblower claim, Plaintiff must establish by a

---

[3] For purposes of this motion, Defendants do not dispute that Plaintiff was an "employee" and Defendant D Construction is a "non-Federal employer" which received "covered funds" as defined in the ARRA.

[4] Because PL 111-5 concerns appropriations, it has not been codified in the official United States reporters.

7

preponderance of the evidence that his protected conduct was a "contributing factor" to his termination. ARRA clarifies that the contributing factor element can be proved through temporal proximity or by demonstrating that the decision-maker knew of the protected disclosure. *See* Section 1553 (c)(1)(A)(ii). To rebut Plaintiff's ARRA claim, Defendants must only demonstrate that they would have taken the same action in the absence of Plaintiff's protected conduct. *See* Section 1553(c)(1)(B). As described below, Defendants can do just that.

### B. Plaintiff Cannot Establish That He Engaged In ARRA Protected Conduct

In his Complaint, Plaintiff conclusorily alleges that D Construction engaged in a number of misdeeds "for certain projects, including projects receiving stimulus funds," but never identifies the specific projects or whether those projects concerned "covered funds." (Compl. ¶15(a)-(b)). In his deposition, Plaintiff clarified that his ARRA concerns related to: (1) an incident when he believed that D Construction improperly scrapped a new box of nails (SOF ¶ 58); (2) an incident when he believed he observed D Constructing using old plywood instead of new plywood when pouring concrete (SOF ¶ 58); and (3) an incident when he noted a safety issue on a bridge construction project, which the Company rectified that same day. (SOF ¶ 60-61).

Even without Plaintiff's years of industry training and experience, he should be acutely aware that the minor concerns he identified do not rise to the level of "gross mismanagement" or "gross waste" prohibited under ARRA as a matter of law. The job for which D Construction hired Plaintiff required him to raise safety concerns with D Construction management so that they could be timely resolved. (SOF ¶¶ 9-12). No record evidence suggests that D Construction understood any of Plaintiff's reports to be reports of ARRA violations. (SOF ¶¶ 14, 61). Indeed, even Plaintiff does not recall any specific ARRA funded projects that he identified on the Loss Prevention Report issues that needed to be improved upon. (SOF ¶ 14).

Moreover, none of the complaints made by Plaintiff actually constitute an ARRA violation. The United States Department of Transportation Office of Inspector General ("DOT OIG") agreed. While employed at D Construction, Plaintiff completed daily inspection of work sites and reported safety issues on Loss Prevention Reports. (SOF ¶ 13). On February 18, 2010, Plaintiff filed a complaint with the DOT OIG, alleging claims of retaliation under ARRA. (SOF ¶ 71). The DOT OIG investigated Plaintiff's allegations and determined that his "disclosures did not relate to ARRA funds." (SOF ¶ 72).[5] Specifically, the DOT OIG inspector noted that Plaintiff had provided a list of D Construction's ARRA funded contracts. (SOF ¶ 73). When the inspector compared that list to the mere 10 Loss Prevention Reports on which Plaintiff noted that the Company's safety measures "Need[ed] Improvement," he determined that *none* of Plaintiff's identified safety issues related to any ARRA project. (SOF ¶ 74).

In sum, Plaintiff's ARRA claim is fatally flawed because Plaintiff fails to establish (1) that his purported ARRA disclosures related to any of the conduct specified at Section 1553(a)(1)-(5), (2) that the purported disclosures concerned projects funded by covered funds, or (3) that his belief that an ARRA violation occurred was "reasonable" or "objective" in light of the information available to him.

### C. D Construction's Termination Decision Was Unrelated to Plaintiff's Alleged ARRA Disclosure

As described above, the undisputed evidence establishes that Plaintiff's refusal to attend the Exelon training – and not any whistle blowing activity – caused his termination. (SOF ¶¶ 30, 37). Critically, Plaintiff admits that Duran told Plaintiff that his employment was terminated because Plaintiff "refused to go take the training to work at the Exelon facility." (SOF ¶ 30).

---

[5] This government record is admissible evidence pursuant to Fed. R. Evid. 803(8).

9

Plaintiff testified in his deposition that he did not believe his refusal to attend the training was the real reason for his termination and cited to a host of factors which he believed led to his termination. (SOF ¶ 31). Critically, none of those reasons relate to ARRA funded projects. (SOF ¶ 72). Speculation and conjecture aside, there is only one reason for Plaintiff's termination that is supported by evidence: Plaintiff's refusal to attend the Exelon training as directed by his supervisor. (SOF ¶ 37). ARRA does not protect such direct insubordination.

For these reasons, Defendants should be granted summary judgment on Count I of Plaintiff's Complaint alleging claims arising under ARRA.

## V. PLAINTIFF'S FCA CLAIM FAILS AS A MATTER OF LAW

In Count II, Plaintiff alleges his discharge violated the FCA because he allegedly "engaged in lawful acts to stop violations of" the Fraud Enforcement and Recovery Act of 2009 ("FERA"). (Compl. ¶ 75). FERA, an amendment to the FCA, extends liability, *inter alia*, "to any person who: (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729 (A) and (B).

The FCA provides whistleblower protection to employees who act to prevent FCA violations. 31 U.S.C. § 3730(h). Specifically, section 3730(h) protects persons who assist the "discovery and prosecution of fraud." *See Neal v. Honeywell*, 33 F.3d 860, 861 (7th Cir. 1994). A plaintiff can sue for retaliatory discharge under section 3730(h) based on a "reasonable belief" that the defendant made a false claim. 31 U.S.C. § 3730(h).

### A. The Elements of a Claim Pursuant to Section 3730(h) of the FCA

A successful plaintiff under Section 3730(h) must establish that: (1) he engaged in conduct protected under the FCA; (2) the employer must have had knowledge of the employee's activity and had either explicit or implicit notice that the activity could result in a FCA complaint

being filed; and (3) the employee must establish that the discrimination that he or she suffered was caused as a result of the protected activity: *i.e.*, the employer's action was motivated by the employee's protected activity. *See Neal v. Honeywell*, 942 F. Supp. 388, 396-97 (N.D. Ill. 1996); *Brandon v. Anesthesia & Pain Mgmt. Assoc., Ltd.*, 277 F.3d 936, 944 (7th Cir. 1994).

### 1. Plaintiff Must Be Engaged in Protected Activity

To prevail on his FCA claim, Plaintiff must demonstrate that his activity was "in furtherance of an action … filed or to be filed" under section 3730. 31 U.S.C. § 3730(h). Although courts interpret the "in furtherance" requirement broadly, there are limitations on the scope of the FCA anti-retaliation provisions:

> [A]n employee who fabricates a tale of fraud to extract concessions from the employer, or who just imagines fraud but lacks proof, legitimately may be sacked. No action is 'to be filed' in either case, and employees who use reports of fraud to better their own position, or who behave like Chicken Little, impose costs to employers without advancing any of the goals of the False Claims Act.

*Id.*

The Seventh Circuit has also noted that mere "[s]aber-rattling is not protected conduct." *See Luckey v. Baxter Healthcare Corp.*, 183 F.3d 730, 733 (7th Cir. 1999) (finding that protected conduct includes "investigation, testimony, and litigation," not idle threats). Thus, the first element of a section 3730(h) claim is judged based upon the information known to the plaintiff while engaged in his activities. Seventh Circuit law interpreting the reasonableness of a plaintiff's belief that a suit "could be filed legitimately" provides that plaintiff's belief must be reasonable under an objective standard. *See Neal*, 33 F.3d at 864; *Lang v. Northwestern Univ.*, 472 F.3d 493, 495 (7th Cir. 2006) ("Lang may have been a thorn in management's side, but the statute is not designed to protect pests, who are more trouble than they are worth.").

Here, Plaintiff purports to bring his FCA claim pursuant to FERA, which concerns false financial reporting. (Compl ¶¶ 70-76). Critically, however, Plaintiff admits that he had no

11

access to D Construction's financial records or information, billing records, purchasing records, bids, or non-public contracts (SOF ¶ 56). Although Plaintiff alleges that he provided information about FERA to Defendants, he had no reasonable factual basis for believing the Company was engaged in FERA violations. Therefore, Plaintiff's conduct was nothing more than "saber-rattling" and not protected FCA conduct.

### 2. Employer's Awareness of "Protected Activity"

Plaintiff must also demonstrate that Defendants had either explicit or implicit notice of his activities and recognize that activity as protected activity. *See Brandon*, 277 F.3d at 945; *see Fanslow*, 384 F.3d at 483; *Lao Chua v. St. Paul Fed. Bank for Savs.,* No. 95 C 2463, 1996 WL 312079, at *3-4 (N.D. Ill. June 7, 1996) (plaintiff, who had been terminated for insubordination, failed to establish the threshold requirement that he engaged in protected activity and that his employer was aware of said activity).

Courts have held that if an employee is assigned the task of monitoring an employer's compliance with applicable laws, the employee's FCA protected conduct must go beyond general job duties to successfully prove the first element of a section 3730(h) claim. *See Brandon*, 277 F.3d at 945; *see also Fanslow*, 384 F.3d at 483 (noting that a "heightened notice standard" was properly applied in *Brandon* because "it is important to consider whether monitoring is part of the employee's ordinary job"). To the extent that Plaintiff identifies any of his safety-related reporting as FCA protected conduct, such activity was "part of his job" and therefore not FCA protected conduct. (SOF ¶¶ 11-14). Plaintiff did nothing extraordinary that would put the Company on notice that he had engaged in FCA protected activity.

Indeed, Plaintiff does not claim that he told D Construction that it was violating the FCA or that he threatened to sue under the FCA. (SOF ¶ 69). Plaintiff generally alleges that he warned Duran against "mismanaging stimulus projects in violation of federal law" and that he

12

provided Duran with the "applicable excerpts of federal regulations." (SOF ¶ 69; Compl. ¶ 43.) Such conduct from a safety inspector is not extraordinary and is not sufficient to put the Company on notice that he was engaged in FCA protected conduct.

### 3. Discrimination Must Be Due to the Protected Activity

Finally, Plaintiff must establish that there is a "causal connection" between his alleged protected activity and the employer's allegedly retaliatory action. *See Fanslow*, 384 F.3d at 485. Failure to establish this "causal relationship" is "fatal" to the cause of action. *See e.g. X Corp. v. Doe*, 816 F. Supp. 1086, 1096 (E.D. Va. 1993). Thus, Plaintiff must demonstrate that his discharge was caused by his alleged protected conduct. *Fanslow*, 384 F.3d at 485. In cases where the employer is not aware of the protected activity at the time of discharge, the causation element is clearly not met. *See Cafasso v. General Dynamics Systems, Inc.*, 637 F.3d 1047, 1060 (9th Cir. 2011) (finding that plaintiff "had adduced no evidence that [the adverse employment actions] were causally related to [her alleged protected activity]" where official who eliminated plaintiff's position did not know about plaintiff's conduct). Such is the case here. Plaintiff has no evidence that anyone at D Construction believed he had engaged in FCA protected conduct.

Even if Defendants should have known that Plaintiff was engaged in FCA protected conduct, Plaintiff cannot establish, as he must, that his alleged protected activity caused his termination. As described above, the record is clear regarding the reason for Plaintiff's discharge. *See* supra III.C. The undisputed facts reveal that Duran terminated Plaintiff's employment solely because of his insubordination related to the Exelon training. (SOF ¶¶ 29-30).

For these reasons, Defendants are entitled to summary judgment on Count II of Plaintiff's Complaint alleging claims arising under the FCA.

## VI. PLAINTIFF'S IWA CLAIM FAILS AS A MATTER OF LAW

In Count IV, Plaintiff alleges that he was fired in retaliation for his disclosures to OSHA. (Compl. ¶ 88).[6] The IWA protects an employee from retaliation for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a state or federal law, rule, or regulation. 740 ILCS 174/20. Retaliatory discharge cases, including those brought under the IWA, typically hinge on whether a plaintiff is able to establish that his protected activity *caused* his discharge. *See Sardiga v. N. Trust Co.*, No. 1-09-2930, 2011 Ill. App. LEXIS 223, *9 (Ill. App. Mar. 15, 2011) (affirming summary judgment on the plaintiff's IWA claim).

In this case, Plaintiff is unable to establish the basic statutory requirements of his IWA claims - namely, that he made a complaint to a government or law enforcement agency that he believed disclosed a violation of law. Plaintiff testified that he attended one meeting with OSHA (SOF ¶ 67). According to Plaintiff, Ken Sandeno wanted him to convince the OSHA hearing officer to change the type of violation, which Plaintiff was unable to do. (SOF ¶ 67). According to Plaintiff, his alleged "disclosure" was telling an OSHA hearing officer that he wouldn't work for a contractor that would jeopardize [his] reputation as a safety professional." (SOF ¶ 68). Plaintiff explained that the comment was "meant to show to the compliance officer that I wouldn't work fro D if they weren't listening to me and taking my advice[,] that my time on the

---

[6] Although Plaintiff's Complaint limits his IWA claim to a "disclosure" claim, to the extent Plaintiff attempts to make an IWA "refusal" claim pursuant to 740 ILCS 174/20, such a claim would also fail as there is no evidence that Plaintiff refused to participate in any conduct that would result in a violation of the law. Plaintiff disagreed with Duran about recording the way the truck driver's injuries were recorded on OSHA logs, but there is no evidence that Plaintiff was asked to engage in any behavior or that he "refused" to engage in any behavior. (SOF ¶ 68). In any event, Plaintiff's conduct related to this incident did not cause his termination; his refusal to attend the Exelon training caused his termination (SOF ¶¶ 30, 37, 39).

site … wasn't producing any positive result…." (SOF ¶ 68). This record simply does not support Plaintiff's allegation that he reported a violation of the law to OSHA. Indeed, Plaintiff only complained to government entities about alleged legal violations *after* his employment with D Construction ended. (SOF ¶¶ 70-71). These admissions are fatal to his IWA claim. Furthermore, even if Plaintiff did engage in protected conduct during his employment, which he did not, Plaintiff would still not be able to establish that any protected conduct caused his termination, as D Construction had a legitimate, not retaliatory, reason for Plaintiff's termination – his refusal to comply with Duran's directive to attend Exelon's training course.

## VII. PLAINTIFF'S RETALIATORY DISCHARGE CLAIM FAILS AS A MATTER OF LAW

In Count V, Plaintiff alleges that his employment was terminated in retaliation for opposing or reporting illegal activities. (Compl. ¶ 90-92). To establish a claim for common law retaliatory discharge, a plaintiff must prove: (1) that he was discharged; (2) in retaliation for his activities; and (3) the discharge violates a clear mandate of public policy. *Vorgapel v. Maxell Corp. of Am.*, 333 Ill. App. 3d 51, 54 (2002). An employer then has an opportunity to demonstrate that there was a legitimate reason for plaintiff's termination. *Id.* at 57. A plaintiff can only overcome the employer's legitimate reason by presenting evidence that refutes the employer's reason for the termination. *Id.*

As an initial matter, Gerhard's common law retaliatory discharge claim must fail because there existed alternative remedies to "serve as an effective deterrent to future employer misconduct." *Hamros v. Bethany Homes*, 894 F. Supp. 1176, 1179 (N.D. Ill. 1995). This is evident from his Complaint, as Plaintiff relies upon the same facts to support his tort claim and his FCA, ARRA, and IWA retaliatory discharge claims. (Compare Compl. ¶ 90 *with* Compl. ¶¶ 61, 72, 84). Given the existing effective deterrents to the conduct alleged by Gerhard, he cannot

state a claim based on the tort of retaliatory discharge. *See Elliott v. Lake County Community Action Project*, No. 00-cv-0842, 2000 U.S. Dist. LEXIS 9476, at *10 n.2 (N.D. Ill. July 6, 2000 (dismissing plaintiff's retaliatory discharge claim premised upon the False Claims Act). Indeed, Plaintiff sought to deter Defendants alleged conduct through his complaints to the United States Department of Labor and the DOT OIG pursuant to ARRA. (SOF ¶ 71). To the extent such agency-level deterrence is insufficient, the anti-retaliation provisions allowing civil litigation under both OSHA and ARRA are sufficient.

Even if Plaintiff's common law tort of retaliatory discharge claim is recognized here, his claim still must fail. Specifically, for the same reasons that Plaintiff cannot demonstrate that Defendants retaliated against him under ARRA, the FCA, and the IWA, he also cannot demonstrate that Defendants retaliated against him under this tort cause of action: there is no causal connection between his alleged protected activity and his termination because the Company terminated his employment solely because he refused to attend the Exelon training (SOF ¶¶ 30, 37, 39). Therefore, Defendants should be granted summary judgment on Count V of Plaintiff's Complaint.

## CONCLUSION

WHEREFORE, for these reasons set forth above, Defendants respectfully requests that the Court grant summary judgment in its favor as to Counts One through Five of Plaintiff's Complaint.

16

**DATED: January 27, 2012**  Respectfully submitted,

D CONSTRUCTION, INC., KEN SANDENO, TODD SANDENO


By */s/* Rebecca Pratt Bromet
        Attorney for Defendants

Gerald L. Maatman
Mark Lies, II
Rebecca P. Bromet
Abad Lopez
SEYFARTH SHAW LLP
131 S. Dearborn Street, Suite 2400
Chicago, Illinois 60603
(312) 460-5000

## **CERTIFICATE OF SERVICE**

I certify that on January 27, 2012 the foregoing DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT to be presented to the Clerk of the Court for filing and uploading to the CM/ECF system, which will send notification of such filing to the following:

>Colleen McLaughlin
>Elissa J. Hobfill
>The Law Offices of Colleen McLaughlin
>1751 S. Naperville Road, Suite 209
>Wheaton, IL 60187

/s/ Rebecca Pratt Bromet

14025814v.9