UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| ALLEN GERHARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11 C 631 |
| | ) | |
| D CONSTRUCTION, INC., | ) | District Judge Suzanne B. Conlon |
| TODD SANDENO and KEN SANDENO, | ) | |
| | ) | Magistrate Judge Susan E. Cox |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

Susan E. Cox, Magistrate Judge

Defendants, D Construction, Inc. ("the company") and its owners Todd and Ken Sandero (collectively "defendants"), have filed a motion for sanctions against plaintiff, Allen Gerhard, based on his admitted destruction of a personal computer that he sometimes used for work. For the reasons stated below, the Court respectfully recommends that the district judge deny this motion in its entirety [dkt. 44].

**I.    Background**

The company employed plaintiff as a field safety inspector from May of 2009 until October 20, 2009 when it fired him.[1] Plaintiff's duties were to visit the company's active job sites and inspect them for safety concerns.[2] Plaintiff essentially claims that he was fired because he had engaged in activity protected under various federal statutes. For example, he reported to the company and to OSHA that its employees were violating OSHA safety standards in "loss control surveys" and

---

[1] Defendants' Rule 56.1 Statement of Material Facts ¶4, admitted by plaintiff (hereinafter referred to as "SOF").
[2] SOF ¶9.

"safety audits," which he prepared for the company, as well as informing OSHA that the company did not report an employee injury to OSHA that he believed to be mandated by regulation.[3] The company does not dispute that defendant reported safety violations to it and to OSHA, nor do they dispute that defendants differed with plaintiff about whether certain OSHA regulations mandated that the company report some employee injuries. Instead, the company asserts that it did not fire plaintiff for taking these actions, it fired him because he disobeyed a direct instruction from his supervisor to attend a mandatory training.[4]

While plaintiff was employed at the company, he sometimes used his personal computer to draft his safety audits, including uploading the pictures that accompanied those reports to his hard drive.[5] After completing such an audit report, he printed the report, made approximately twenty copies and disseminated it at company meetings concerning ongoing safety issues. He did not electronically transmit his safety audits because management at the company was not particularly computer savvy; only Orlando Duran, to whom he directly reported, actually used a computer. Occasionally, plaintiff e-mailed pictures to him.[6] The company does not dispute that plaintiff provided it with copies of the audits. In fact, Orlando Duran recalled that these reports were always provided to management in the way that plaintiff described.[7] Once plaintiff completed such a report, he did not separately save it on his computer. Instead, when plaintiff began a new audit, he simply used the previous audit as a template and essentially "wrote over" that audit with new observations

---

[3] *See* Plaintiff's Complaint, Dkt. 1.
[4] SOF ¶¶10-12; ¶30.
[5] Gerhard Deposition, Exhibit A, Plaintiff's Response to Motion for Sanctions, pp. 66-68. (hereinafter "Gerhard Dep.")
[6] *Id.*
[7] SOF ¶12; Duran Deposition, Exhibit B to Defendants' Motion for Sanctions, pp. 239-243, 340 (hereinafter "Duran Dep."); Gerhard Dep. at 68-30.

and pictures. In all, plaintiff wrote eight such audits, all of which were provided to the company, but only retained hard copies of four which were produced during discovery in this case.[8]

In the early part of 2010, after plaintiff was fired, his hard drive crashed. Plaintiff believes that the last version of his report probably was still on his hard drive when the crash occurred. (This would have been a report dated September 11, 2009). Plaintiff made efforts to repair the hard drive himself, although he did not take it anywhere for repair believing that if he could not repair it, it probably was beyond help. He then decided to destroy the hard drive by torching it.[9] Plaintiff testified that "I could not retrieve any information off of it, but I am not a computer genius, and I wanted to ensure that if anyone were to get access to it, you know, after it was put in the trash it's accessible to I don't know who, so that's the proper thing to do to the best of my knowledge."[10] Plaintiff further testified that he was afraid that someone might obtain his personal information from his hard drive if he did not destroy it.[11]

After plaintiff was fired, he filed administrative charges against the company with both the United States Department of Labor, OSHA and the Department of Transportation, Office of the Inspector General.[12] He filed these charges *pro se*. Despite the fact that these charges were pending at the time that his hard drive crashed, he was not concerned about destroying the work-related information on the computer because, in his mind, he had printed each of his reports and the back-up for them and had provided such information to the company. The best evidence that this statement is essentially truthful is that plaintiff did not bother to save each report separately, but instead wrote

---

[8] Gerhard Dep. at 68-69, 89-90.
[9] *Id.* at 181-182.
[10] *Id.* at 181.
[11] *Id.*
[12] SOF ¶¶70-71.

over them with each new audit. And, as noted above, Orlando Duran corroborates plaintiff's statement that all of these audit reports and accompanying materials were disseminated to the company's management team.

Defendants claim that plaintiff's admitted destruction of his hard drive constitutes a deliberate spoliation of relevant evidence. Accordingly, they have asked the Court to impose certain sanctions against plaintiff including the most severe sanction of an outright dismissal. They also argue, as an alternative sanction, that the Court instruct the jury that plaintiff destroyed relevant evidence and that it should infer from this fact that the evidence so destroyed was not favorable to plaintiff's cause. In addition, defendants have asked that the court award their fees and costs in bringing this motion.

## II. Legal Standard

Both the Court's inherent powers as well as the Federal Rules of Civil Procedure give the Court the authority to sanction a party for failure to preserve documents.[13] A motion for discovery sanctions can be made when a party either destroys or fails to preserve evidence which it controls and which it could reasonably foresee to be material to a potential lawsuit.[14] The purpose of sanctions is to prevent abuses of the judicial system and to promote the efficient administration of justice.[15] The Court's power to sanction includes sanctioning parties that fail to preserve potential evidence that would have been discoverable.[16] Sanctions "must be proportionate to the

---

[13] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50-51 (1991); *Barnhill v. United States*, 11 F.3d 1360, 1368 (7th Cir. 1993).

[14] *Porche v. Oden*, No. 02 C 7707, 2009 WL 500622, at *3 (N.D.Ill. Feb. 27, 2009), citing Fed. R. Civ. P. 37(c)(1).

[15] 11 F.3d at 1367.

[16] *Wigninton v. Ellis*, No. 02 C 6832, 2003 WL 22439865, at *3 n. 5 (N.D. Ill. Oct. 27, 2003).

circumstances surrounding the failure to comply with discovery."[17]

To find that sanctions for spoliation are appropriate, the Court must find the following: 1) that there was a duty to preserve the specific documents and/or evidence, 2) that the duty was breached, 3) that the other party was harmed by the breach, and 4) that the breach was caused by the breaching party's wilfulness, bad faith, or fault.[18] If the Court finds that sanctions are appropriate, it must determine whether the proposed sanction can ameliorate the prejudice that arose from the breach; if a lesser sanction can accomplish the same goal, the Court must award the lesser sanction.[19]

First, a party has a duty to preserve evidence that it has control over and which it reasonably knows or can foresee would be material (and thus relevant) to a potential legal action.[20] A document is potentially relevant, and thus must be preserved for discovery, if there is a possibility that the information therein is relevant to any of the claims.[21] The existence of a duty to preserve evidence does not depend on a court order.[22] Instead, it arises when a reasonable party would anticipate litigation.[23] Second, the duty to preserve evidence must have been breached.[24] Reasonableness is the key to determining whether or not a party breached its duty to preserve evidence.[25] Of course, parties must take positive action to preserve material evidence.[26] Third, the breach in question must have harmed the other party. Finally, there must be a sufficient level of fault to warrant sanctions.[27]

---

[17]*Langley v. Union Electric Co.*, 107 F.3d 510, 515 (7th Cir. 1997) (internal citations omitted).
[18]*Porche*, 2009 WL 500622 at *5.
[19]*Larson v. Bank One Corp.*, No. 00 C 2100, 2005 WL 4652509 at *9 (N.D. Ill. Aug. 18, 2005).
[20]*Bryant v. Gardner*, 07 C 5909, 587 F. Supp. 2d 951, 967-68 (N.D. Ill. Nov. 21, 2008).
[21]*Ares-Serano, Inc. v. Organon Int'l B.V.*, 151 F.R.D. 215, 219 (D. Mass 1993).
[22]*Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008).
[23]*Id.*
[24]*Porche*, 2009 WL 500622 at *5.
[25]*Haynes v. Dart*, 08 C 4834, 2010 WL 140387, at *4 (N.D. Ill. 2010), *citing Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992).
[26]*Danis v. USN Communications, Inc.*, 98 C 7482, 2000 WL 1694325 at *38 (N.D. Ill. Oct. 23, 2000).
[27]*Porche*, 2009 WL 500622 at *5.

Findings of wilfulness, bad faith, and fault are all sufficient grounds for sanctions.[28] However, a court may only grant an adverse inference sanction upon a showing of bad faith.[29] Bad faith requires the intent to hide unfavorable information.[30] This intent may be inferred if a document's destruction violates regulations (with the exception of EEOC record regulations).[31] Fault is defined not by the party's intent, but by the reasonableness of the party's conduct.[32] It may include gross negligence of the duty to preserve material evidence.[33] Mere negligence is not enough for a fact finder to draw a negative inference based on document destruction.[34]

### III. Analysis

Applying these standards to this case, we have no difficulty reaching the conclusion that plaintiff was under a duty to preserve relevant evidence at the time that he destroyed his personal computer and that whatever still remained on his hard drive when it crashed was relevant to his claims. Accordingly, plaintiff breached that duty when he destroyed his computer. What is far more difficult to conclude, however, is that plaintiff's action caused any prejudice to defendants, or that plaintiff intended to destroy evidence; evidence which comprised of photographs and safety audits he had already given the company during his employment, which the company acknowledges receiving.

For its analysis here, the Court benefits from the fact that defendants have filed a motion for

---

[28] *Porche*, 2009 WL 500622, at *5; *but see Trask-Morton*, 534 F.3d at 681 ("a showing [of bad faith] is a prerequisite to imposing sanctions for the destruction of evidence," thereby refusing to issue sanctions because the level of fault had not risen to the level of bad faith).
[29] *Fass v. Sears, Roebuck & Co.*, 532 F.3d 633, 644 (7th Cir. 2008); *but see OCE North America, Inc. v. Brazeau*, 09 C 2381, 2010 WL 5033310, at *6 (N.D. Ill. March 18, 2010) ("[a]n adverse inference may be appropriate if . . . the breach involved willfulness, bad faith or fault...[.]")
[30] *Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998).
[31] *Park v. City of Chicago*, 297 F.3d 606, 615 (7th Cir. 2002).
[32] *Id.*
[33] *Marrocco v. Gen. Motors*, 966 F.2d 220, 224 (7th Cir. 1992).
[34] *Rodgers v. Lowe's Home Ctrs, Inc.*, 05 C 0502, 2007 WL 257714 at *5 (N.D. Ill. Jan. 30, 2007).

summary judgment. It is clear from the Defendants' Rule 56.1 Statement of Material Facts that the defense in this case does not depend in any way on whether plaintiff created these safety audit reports; defendants concede in their filing that plaintiff submitted these reports to the company as part of his regular duties. Defendants' defense instead centers on their contention that nothing plaintiff observed in these reports has anything to do with his termination. Defendants submit that the company fired plaintiff for failing to obey a direct order from his supervisor to attend a training at an Exelon facility. Defendants further contend that the plaintiffs' disclosures to the company do not rise to the level of protected activity under the American Recovery and Reinvestment Act ("ARRA") and that plaintiff was unaware which projects were receiving federal funding, thus defeating his retaliation claim under the FCA/FERA.

None of defendants' defenses remotely rely on any of the evidence that may have existed on plaintiff's computer at the time that the hard drive crashed, and then was destroyed by plaintiff. In fact, the destruction of additional reports concerning safety violations, reports which are not now recoverable, only hurts the plaintiff, depriving him of access to more evidentiary support that he complained about additional safety issues to the company and to OSHA. Defendants, nonetheless, claim that their prejudice is "undeniable and severe." But the facts do not bear this out. The only prejudice identified by defendants is first, that plaintiff no longer can produce all eight safety audit reports he created for the company; second that three of these reports cannot be authenticated as accurate by the company, and; third, that there are two versions of one report. This is a claim defendants clearly were aware of when they filed their original motion, but inexplicably left to their reply to mention for the first time.

The problem with defendants' assertion of prejudice is that it ignores the evidence in the

record before the Court. As plaintiff *and* defense witness Orlando Duran both testified, plaintiff produced *all* of his safety audits to more than twenty management employees in the regular course of his duties at the company. Defendants concede as much in their Rule 56.1 Statement of Facts. In other words, the company itself possessed all of the information at the time that it fired plaintiff on October 20, 2009. Plaintiff's charge of retaliation against defendant was then filed with OSHA *six days* later. So defendants' claim of prejudice now, when it was their own failure to retain these documents (which they admit plaintiff gave them) in light of this charge is troubling. On the one hand, they claim that plaintiff should have preserved these records on a personal computer, which he occasionally used for business purposes, and that his destruction of the hard drive when it crashed was done to spoliate evidence. On the other hand, they offer no explanation as to why the company, to which plaintiff gave all of his reports, no longer has copies of much of this evidence.

The bottom line is that both sides knew that these reports could be relevant by October 26, 2009. Plaintiff preserved at least some of the hard copies of the reports. Defendants apparently preserved much less despite being aware of plaintiffs' contentions. Given that failure, the Court is hard-pressed to find that the absence of this evidence should be held against the plaintiff who believed that he discharged his obligations when he gave copies of the safety audits to his employer. Even if that were not the case, however, the Court cannot find that the absence of this evidence really harms defendants in any material way. As stated above, defendants do not dispute that the audits were done; they dispute that plaintiff's safety reporting played any part in his termination.

As for the two different versions of one of the reports, defendants claim that plaintiff "intentionally altered" one of the reports to bolster his retaliation claim. The difference in the two documents is that plaintiff's version adds citations to OSHA regulations, which defendants claim

were not in the report produced to the company. (This was plaintiff's last safety audit that he prepared in September, which plaintiff believed might still have been on his hard drive when it crashed.) As noted earlier, defendants waited until their reply brief to raise this, although they had clearly known that there were two versions of this document since plaintiff produced his copy. Matters raised first in a reply brief are waived.[35] But even if we did not deem it waived, we cannot find on the record submitted to the Court that plaintiff improperly altered a document simply because there are two different versions of it, one annotated with citations, the other not.

We have concluded that defendants cannot demonstrate prejudice sufficient to require a sanction, so we do not need to reach the question of fault. We do, however, make the following comments. At the time that plaintiff filed his charges, as well as when he destroyed the hard drive, plaintiff did not have the benefit of legal counsel. Was it unreasonable for plaintiff to destroy the damaged hard drive? As his deposition testimony makes plain, plaintiff was not concerned about the safety audits; he already had provided multiple copies of them to the company. In fact, he had written over all but that last one from September 2009 after he turned them in. He was, however, concerned about the fact that his personal information might be accessible to someone who found the hard drive in his trash. Accordingly, plaintiff rendered that possibility impossible by his actions. In so doing, he also removed any possibility that electronic versions of the audit reports might still exist in his hard drive.

We emphasize too that the recovery of these documents, even had plaintiff not disposed of his hard drive, is theoretical in any event. Plaintiff has raised the "safe harbor" provision of Federal Rule of Civil Procedure in defense of his actions. Although the Court believes this provision is only

---

[35] *See Carter v. Tennant Co.,* 383 F.3d 643, 679 (7th Cir. 2004).

applicable to the routine operation of an electronic system which overrides information and not to an individual's independent act to override each document manually, it is clear that this manual override was plaintiff's routine practice. Given this practice, as well as the subsequent crash of the hard-drive, it is doubtful that there was evidence left to recover without the expenditure of significant cost. Accordingly, although the plaintiff should have been more thoughtful in his actions, the Court cannot find that the further destruction of the hard drive was done in bad faith. In addition, the company's failure to retain these safety records is equally puzzling. Had it done so, the claimed prejudice (assuming there really is any) would have been completely ameliorated.

Accordingly, the Court declines to recommend any sanction here. Specific written objections to this report and recommendation may be served and filed within fourteen days from the date of this order pursuant to Fed.R,Civ.P. 72(a). Failure to file such objections with the district court within the specified time frame will result in a waiver of all findings, factual and legal, made by the court in this report and recommendation.[36]

**IT IS SO ORDERED.**

**ENTERED**: February 29, 2012

 Susan E. Cox
 U.S. Magistrate Judge

---

[36] *Lorentzen v. Anderson Pest Control,* 64 F.3d 327, 330 (7th Cir. 1995).