IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ALLEN GERHARD,  )
　)
　　　　　　　　Plaintiff,  )
　)  Civil Action No.: 11 C 0631
v.  )
　)
D CONSTRUCTION, INC., TODD  )  Suzanne B. Conlon, Judge
SANDENO, and KEN SANDENO,  )
　)
　　　　　　　　Defendants.  )
　)

## MEMORANDUM OPINION AND ORDER

Allen Gerhard ("Gerhard") sues his former employer, D Construction, Inc. ("D Construction"), under the American Recovery and Reinvestment Act of 2009 ("ARRA"), Pub. L. No. 111–5, § 1533, 123 Stat. 115, 297 (2009) (Count I), the False Claims Act ("FCA"), 31 U.S.C. § 3730, *et seq.* (Count II), the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* (amended by the ADA Amendments Act of 2008, Pub. L. No. 110-325, and the Civil Rights Act of 1991, Pub. L. No. 102-166) (Count III), the Illinois Whistleblower Act ("IWA"), 740 ILCS 174/15 (Count IV), the Illinois common law of wrongful discharge in violation of public policy (Count V), the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, *et seq.* (Count VI), and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* (Count VII). Defendants move for summary judgment on counts I through V.[1] For the reasons

---

[1] In responding to defendants' motion for summary judgment, Gerhard withdraws Count III. Gerhard informs the court that Counts VI and VII have been resolved through a Rule 68 offer of judgment. D Construction owners Todd Sandeno and Ken Sandeno were only named in the resolved counts, and there are no allegations as to their individual liability in Counts I, II, IV, and V.

set forth below, D Construction's summary judgment motion is granted in part.

## BACKGROUND

The following facts are derived from the parties' Local Rule 56.1 statements and exhibits. D Construction is a private company, incorporated in Illinois, that specializes in the construction and repair of roads, bridges, and various plants. Def. Facts ¶ 3. In May 2009, Gerhard began working for D Construction, as a field safety inspector.[2] Pl. Facts ¶ 5. The position involved inspecting the company's active job sites for potential safety concerns and ensuring compliance with various statutory guidelines. Def. Facts ¶¶ 9-10. At least two D Construction projects received federal funding through the ARRA (more commonly known as the Stimulus Act or Recovery Act). Pl. Facts ¶ 10.

Gerhard reported to D Construction Safety Manager Orlando Duran ("Duran"), who in turn reported to D Construction's owners, Todd Sandeno and Ken Sandeno. Def. Facts ¶ 6. Over the course of Gerhard's employment as a field safety inspector, he completed at least 284 loss prevention reports, in which he evaluated the safety of D Construction's work sites. Def. Facts ¶ 13. Additionally, Gerhard regularly provided D Construction with "Executive Summary - D Construction Occupational Safety and Health Program Review" memoranda ("safety audits"), in which he identified potential OSHA violations. Pl. Facts ¶ 10. Approximately once every two weeks, these safety audits were discussed at project manager meetings, which were attended by Duran and the company's owners. *Id.* ¶ 11. In one of these safety audits, Gerhard noted possible OSHA violations at two ARRA-funded work sites. Pl. Ex. F: Gerhard Decl. and Corresponding

---

[2] D Construction asserts that this position was actually called "field safety," but this distinction is not important to the claims before the court. Def. Resp. to Pl. Facts ¶ 5.

Exhibits, Sept. 12, 2009 Safety Audit at 4-5.

On October 12, 2009, Duran asked Gerhard to attend an October 19, 2009 training program to work at the Exelon nuclear power plant in Braidwood, Illinois. Def. Facts ¶¶ 17, 20-21, Pl. Facts ¶ 31. Gerhard had a number of reservations about training at the Exelon site. Gerhard Dep. Tr. at 115-117. These concerns involved personal medical issues and a fear that, on account of medications he was taking, he would fail drug screening at the site. *Id.* The parties dispute whether Gerhard ever agreed to attend the Exelon training, and whether the training was "mandatory" for his position. Duran Dep. Tr. at 311-14; Gerhard Dep. Tr. at 143.

Ultimately, Gerhard did not attend the Exelon training session. Def. Facts ¶ 28. The next day, October 20, 2009, he was terminated. Def. Facts ¶ 5. This decision was made exclusively by Duran, who told Gerhard that he was terminated because he refused to attend the Exelon training. Def. Facts ¶¶ 30, 33. D Construction had a three-step procedure for discipline; termination (step three) was proceeded by a verbal warning (step one) and a written warning (step two). Pl. Facts ¶ 35. However, Duran testified that the company reserved the right to skip disciplinary steps in the case of severe misconduct. Duran Dep. Tr. at 55 - 57.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate if the record evidence reveals no genuine issue of material fact and D Construction is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 683 (7th Cir. 2010). D Construction bears the initial burden of showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If satisfied, the burden shifts to Gerhard to go beyond the pleadings and

3

present specific facts that show there is a genuine issue for trial. FED. R. CIV. P. 56(e)(2); *Kramer v. Vill. of N. Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004). There is a genuine issue of material fact if the evidence is sufficient to support a reasonable jury verdict in Gerhard's favor. *Pugh v. City of Attica, Indiana*, 259 F.3d 619, 625 (7th Cir. 2001). In considering D Construction's motion, all facts and reasonable inferences are viewed in the light most favorable to Gerhard. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## II. American Recovery and Reinvestment Act of 2009 Retaliation (Count I)

The ARRA includes whistleblower provisions to protect employees who report concerns about the use of stimulus funds. ARRA, Pub. L. No. 111–5, § 1553, 123 Stat. 115 (2009). A non-federal employer receiving ARRA funds may not take adverse employment action against an employee who, in the ordinary course of his duties or otherwise, discloses to a person with supervisory authority information that he "reasonably believes" is evidence of: (1) gross mismanagement of an agency contract or grant relating to covered funds; (2) a gross waste of covered funds; (3) a substantial and specific danger to public health or safety related to the implementation or use of covered funds; (4) an abuse of authority related to the implementation or use of covered funds; or (5) a violation of a law, rule, or regulation related to an agency contract (including the competition for or negotiation of a contract) or grant, awarded or issued relating to covered funds. *Id.*

In moving for summary judgment, D Construction incorrectly contends that Count I rests solely upon two events involving ARRA-funded work sites. In the first, Gerhard observed a large box of new nails that he believed were improperly left for scrap. Gerhard Dep. Tr. at 204. In the second, Gerhard observed employees using older plywood under a roadway concrete pour

4

where he believed new plywood would have been preferable. *Id.* at 206. Interpreted in the light most favorable to Gerhard, neither incident could reasonably be considered to be a "substantial" danger to public health or safety or a "gross mismanagement" or "gross waste" of covered funds. Furthermore, it is uncontested that Gerhard did not disclose either incident to a supervisor. Def. Facts ¶ 59.

Rather, Gerhard's primary claim under the ARRA is premised on a routine safety audit that he submitted and discussed with management on September 12, 2009. This safety audit identified potential OSHA violations at two projects receiving funding under the ARRA: D Construction project numbers 37109 (ARRA project number 60D65) and 37409 (ARRA project number 60D79). Pl. Facts ¶¶ 16-17. Specifically, the safety audit featured a photograph of a frayed electrical wire and multiple photographs of a worker standing near a crevice. Pl. Ex. F: Gerhard Decl., Sept. 12 Safety Audit at 4-5. Next to each photograph, Gerhard noted the corresponding OSHA requirements: § 1926.403 for electrical conductors and § 1926.501 for employee fall protection. *Id.* Gerhard knew these projects were ARRA-funded through the "Open Jobs List," which provides this information and is distributed at project manager meetings. Pl. Facts ¶ 12.

Gerhard has a master's degree and Ph.D in occupational health and safety management, in addition to other related certifications. Pl. Facts ¶ 1. Given Gerhard's extensive experience with workplace safety, a factfinder could determine that he "reasonably believed" that the evidence contained in this safety audit represented "a substantial and specific danger to public health or safety related to the implementation or use of covered funds" or "a violation of a law, rule, or regulation related to an [ARRA] contract." ARRA § 1553(a).

5

To succeed on his ARRA claim, Gerhard would also have to show that his protected disclosures were a "contributing factor" in Duran's decision to end his employment with the company. ARRA § 1553(c)(1)(A)(i). A "contributing factor" is something less than a "substantial" or "motivating" factor. *Addis v. Department of Labor*, 575 F.3d 688, 691 (7th Cir. 2009). Gerhard has the initial burden to prove this connection, which requires a showing by a preponderance of the evidence. ARRA § 1553(c)(1)(A)(ii). If Gerhard meets this burden, D Construction may rebut his showing by providing clear and convincing evidence that the termination would have occurred in the absence of the protected conduct. ARRA § 1553(c)(1)(B).

Gerhard has not presented any direct evidence that his ARRA-protected activities had a bearing on his termination. Gerhard may also establish this connection through circumstantial evidence, such as temporal proximity or a demonstration that the decision-maker was aware of the protected disclosure. ARRA § 1553(c)(1)(A)(ii). Based on the record before the court, however, the circumstantial evidence is minimal. Gerhard's only protected activity occurred on September 12, 2009. He was terminated on October 19, 2009. Here, there is nothing beyond slight temporal proximity that supports an inference of reprisal. There is no evidence of opposition to *any* of Gerhard's safety audits, or his 284 loss prevention reports, much less the two particular ARRA-related entries in the September 12, 2009 safety audit. In fact, there is no evidence that Duran, the sole decision-maker in the termination, was even aware that Gerhard was engaging in ARRA-protected activities.[3] A temporal connection, standing alone, rarely

---

[3] Duran testified that he did not recall Gerhard complaining about ARRA-funded projects. Def. Facts ¶ 62. Gerhard contests this testimony but does not do so properly. Pl.'s Resp. to Def. Facts ¶ 62. Rather than citing evidence suggesting that Duran knew of the ARRA

6

suffices to show a causal connection, even for summary judgment purposes. *Lang v. Illinois Dept. of Children and Family Services*, 361 F.3d 416, 419 (7th Cir. 2004); *Stone v. City of Indianapolis Public Utilities Div.*, 281 F.3d 640, 644 (7th Cir. 2002).

Gerhard contends there are a number of "suspicious facts" tied to D Construction's justification for his termination. The court examined these "suspicious facts" earlier, but need not consider them further with regard to Count I. There is nothing other than a slight temporal connection tying Gerhard's termination to his ARRA-related activity. A reasonable jury could not find that Gerhard satisfies his initial burden in demonstrating that his ARRA-related activities contributed to his termination.

## III. False Claims Act Retaliation (Count II)

The FCA provides relief for employees who are discriminated against for actions done in an effort to stop FCA violations. 31 U.S.C. § 3730(h). Count II, like Count I, involves ARRA funding for D Construction project numbers 60D65 and 60D79. To secure federal funding for these projects, D Construction entered into contracts with the State of Illinois Department of Transportation. Pl. Facts ¶ 18, Pl. Exs. P and Q: 60D65 Contract at 6-7, 60D79 Contract at 6-7. These contracts include identical provisions requiring that D Construction comply with all applicable laws and regulations. *Id.* While employed at D Construction, Gerhard was reviewing these public contracts because he believed they could potentially lead to an FCA *qui tam* action. Pl. Facts ¶ 20. Gerhard never actually filed such a claim, nor did he advise anyone that he intended to do so. Def. Facts ¶ 69.

---

activity, Gerhard cites unsupported allegations from his own complaint. *Id.*

A claim under 31 U.S.C. § 3730(h) requires that Gerhard establish that: (1) he engaged in conduct protected under the FCA, (2) D Construction had knowledge of his activity and explicit or implicit notice that the activity could result in the filing of an FCA complaint, and (3) this protected activity was the cause of the discrimination. *Brandon v. Anesthesia & Pain Mgmt. Assoc., Ltd.*, 277 F.3d 936, 944 (7th Cir. 1994).

First, to show that he engaged in conduct protected under the FCA, Gerhard must demonstrate that his activity was "in furtherance of an action under this section or other efforts to stop one or more violations of this subchapter." 31 U.S.C. § 3730(h)(2). This includes situations where litigation is a "distinct possibility" – that is, where a claim could be filed legitimately, consistent with Fed. R. Civ. P. 11. *Neal v. Honeywell Inc.*, 33 F.3d 860, 864 (7th Cir. 1994). The FCA extends liability, in relevant part, to any person who: (1) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval or (2) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim. 31 U.S.C. § 3729(a)(1)(A)-(B).

The marrow of Gerhard's potential FCA *qui tam* claim was as follows: because D Construction agreed not to violate any laws or regulations on the job site, its ensuing violations of ARRA and OSHA regulations effectively deceived the government. Construing D Construction's alleged violations of ARRA and OSHA as a violation of the FCA would require an extremely broad reading of 31 U.S.C. § 3729(a), wherein any violation of any law or regulation on the job site of a construction company receiving ARRA stimulus funds would potentially violate the FCA. Gerhard has not submitted any authority to support his expansive interpretation of the FCA whistleblower provision.

8

More importantly, Gerhard's claim fails to satisfy the second requirement to state a claim under 31 U.S.C. § 3730. A reasonable jury would be unable find that D Construction had knowledge of Gerhard's actions and explicit or implicit notice that they could result in the filing of an FCA complaint. As previously noted, a claim under 31 U.S.C. § 3730(h) may include situations where a *qui tam* action is a "distinct possibility." *Neal v. Honeywell*, 33 F.3d 860, 864 (7th Cir. 1994). Here, however, there is no evidence that Gerhard told anyone that he was engaging in, or considering engaging in, FCA-protected activity. The actions Gerhard took in the regular course of his job – presenting safety audits, discussing safety issues at project manager meetings, other routine communications – did not put D Construction on notice that he considered filing an FCA complaint. *See Brandon v. Anesthesia & Pain Mgmt. Assoc., Ltd.*, 277 F.3d 936, 945 (7th Cir. 1994) (when engaged in the "general course of his responsibilities," an employee entrusted with alerting supervisors of non-compliance with Medicare requirements did not necessarily put employers on notice that he was planning to report their conduct). There is no evidence that Gerhard reported any safety violations beyond the normal responsibilities of his position.[4]

### IV. State Law Claims (Counts IV and V)

Because no federal claims remain, the court relinquishes its supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367 (c)(3); *Wright v Assoc. Ins. Cos.*, 29 F.3d 1244,

---

[4] In responding to defendants' Rule 56.1 statement, Gerhard contends he warned Duran and the company owners that they were "lying" to government "particularly when it came to projects funded with Stimulus Act dollars." Pl.'s Resp. to Def. Facts ¶ 62. Gerhard again cites to his complaint rather than properly presenting supporting evidence. *Id.*

1250-52 (7th Cir. 1994). Diversity jurisdiction does not exist under 28 U.S.C. §1332(a). Accordingly, Counts IV and V are dismissed without prejudice.

## CONCLUSION

For the reasons set forth above, summary judgment is granted to the D Construction, Inc. on Counts I and II. Count III is dismissed with prejudice as to all defendants. The state law claims (Counts IV and V) against D Construction are dismissed without prejudice. All claims against Todd Sandeno and Ken Sandeno are dismissed with prejudice.

ENTER:

Suzanne B. Conlon
United States District Judge

March 14, 2012